IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Maher, DC,          :
        Petitioner     :
                 :
    v.                :
                 :
City of Philadelphia (Workers'    :
Compensation Appeal Board),    :   No. 34 C.D. 2021
        Respondent   :   Submitted: July 30, 2021


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: December 2, 2021


      John Maher, D.C. (Provider) petitions for review of the December 23, 2020 decision of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ), which affirmed the denial of Provider's challenge to a utilization review (UR) determination. Upon review, we affirm.

## I. Background

      On January 9, 2012, Kevin Wisinsky (Claimant) sustained an injury in the course and scope of his employment as a corrections officer with the City of Philadelphia (Employer) while throwing a crate of handcuffs, shackles and chains onto a bus transporting inmates. WCJ Decision, 9/4/19 at 3, Reproduced Record

(R.R.) at 68a; *see also id.* at 6, Finding of Fact (F.F.) 3(a). Employer issued a notice of compensation payable (NCP) accepting an injury to Claimant's left shoulder and agreeing to pay workers' compensation benefits (benefits) at a rate of $760.95 per week. Stipulation of Fact (Stipulation), 8/21/18 at 1, ¶ 3, R.R. at 4a.[1]

Claimant underwent neck surgery in March 2012 and began treating with Provider in March 2013. F.F. 1(b) & 3(a). In March 2015, the WCJ ordered an expansion of the description of Claimant's work injury to include C5-C6 and C6-C7 disc herniations[2] for which Claimant had a discectomy and fusion. Stipulation, 8/21/18 at 1, ¶ 4, R.R. at 25a; *see also* WCJ Decision and Order, 3/2/15 at 9, R.R. at 37a. Treatment provided from 2013 to 2017 included chiropractic spinal and extraspinal manipulative therapy, electrical stimulation, traction, low-level laser

---

[1] On March 2, 2015, the WCJ issued a decision granting, in part, a review petition filed by Claimant, thereby amending the description of Claimant's work injury in the NCP to include C5-C6 and C6-C7 disc herniations for which Claimant had a discectomy and fusion. WCJ Decision, 9/4/19 at 3, R.R. at 68a. However, the WCJ denied Claimant's review petition with respect to an alleged low back injury. *Id.*

[2] The C5 and C6 vertebrae of the cervical spine provide flexibility and support to the neck and head. *See All About the C5-C6 Spinal Motion Segment*, SPINE-HEALTH, *available at* https://www.spine-health.com/conditions/spine-anatomy/all-about-c5-c6-spinal-motion-segment (last visited Dec. 1, 2021). The C6 and C7 vertebrae of the cervical spine bear the primary load from the weight of the head and provide support to the lower part of the neck. *See All About the C6-C7 Spinal Motion Segment*, SPINE-HEALTH, *available at* https://www.spine-health.com/conditions/spine-anatomy/all-about-c6-c7-spinal-motion-segment (last visited Dec. 1, 2021).

2

therapy,[3] vertebral axial decompression[4] and therapeutic exercises. F.F. 1(b), R.R. at 68a.[5]

On April 10, 2018, Employer submitted a UR request seeking review of all treatment provided to Claimant by Provider from April 3, 2017 onwards.[6] *See*

---

[3] Low-level laser therapy is the utilization of low-level lasers or light-emitting diodes to decrease pain and inflammation and to stimulate tissue repair. F.F. 1(l)(iii).

[4] Vertebral axial decompression is a form of non-invasive, motorized therapy targeted to relieve pressure on the back by alternately stretching and relaxing the spine. *See VAX-D: Treating Back Pain Without Surgery,* WEBMD, available at https://www.webmd.com/back-pain/features/vax-d-treating-back-pain-without-surgery (last visited Dec. 1, 2021).

[5] Claimant's benefits were suspended as of September 11, 2012, as Claimant had returned to work without a wage loss. Stipulation, 8/21/18 at 1, ¶ 3, R.R. at 4a. Claimant stopped working on May 3, 2018, due to his worsening condition, and his benefits were reinstated. Transcript of Testimony (T.T.), 3/6/19 at 7, R.R. at 47a. In March 2015, Claimant's benefits were reinstated as of September 11, 2012 based on his actual loss of earnings, and he was awarded partial disability benefits from that date forward. Stipulation, 8/21/18 at 1, ¶ 4, R.R. at 4a. On or about May 24, 2018, Claimant filed a petition to reinstate benefits, seeking to be paid total disability benefits as of May 3, 2018 and ongoing. *Id.* at 1, ¶ 5, R.R. at 4a. The parties agreed to the reinstatement of total benefits as of May 4, 2018, and to grant Employer credit for any partial benefits paid during the same time period. *Id.* at 1, ¶¶ 5-6, R.R. at 4a.

[6] The utilization review organization (URO) was assigned to the instant matter on April 10, 2018. *See* UR Determination at 1, R.R. at 8a.

Pursuant to Section 127.404(b) of the Bureau of Workers' Compensation (Bureau) Regulations:

> If an insurer or employer seeks retrospective review of treatment, the request for UR shall be filed within 30 days of the receipt of the bill and medical report for the treatment at issue. Failure to comply with the 30-day time period shall result in a waiver of retrospective review. If the insurer is contesting liability for the underlying claim, the 30 days in which to request retrospective UR is tolled pending an acceptance or determination of liability.

34 Pa. Code § 127.404(b).

UR Report at 1, R.R. at 10a; Board Opinion, 8/20/20 at 2, R.R. at 87a.[7] The assigned reviewer, Mark Walter, D.C. (Reviewer), evaluated the reasonableness and necessity of the following types of treatment:

- Massage therapy, including effleurage, petrissage and/or tapotement;[8]
- chiropractic manipulative treatment; spinal one to two regions;
- chiropractic manipulation treatment extraspinal, one or more regions;
- physical medicine treatment to one area; electrical stimulation (unattended);
- therapeutic procedure, one or more areas, each 15 minutes (therapeutic procedure);[9]
- therapeutic exercises to develop strength;
- vertebral axial decompression;

---

[7] "The Bureau will randomly assign requests for UR to authorized UROs." Section 127.403 of the Bureau's Regulations, 34 Pa. Code § 127.403. "Upon receipt of the medical records, the URO shall forward the records, the request for UR, the notice of assignment and a Bureau-prescribed instruction sheet to a reviewer licensed by the Commonwealth in the same profession and having the same specialty as the provider under review." Section 127.466 of the Bureau's Regulations, 34 Pa. Code § 127.466.

[8] Effleurage, petrissage, and tapotement are Swedish massage techniques. *See What Is Swedish Massage?*, WEBMD, available at https://www.webmd.com/balance/what-is-a-swedish-massage (last visited Dec. 1, 2021).

[9] Reviewer stated that he would not address "therapeutic procedures, one or more areas, each 15 minutes," as Provider's records did not contain information regarding this treatment. *See* UR Determination at 6, R.R. at 15a; F.F. 1(d).

- application of modalities (requiring constant provider attendance) to one or more areas;[10]
- low-level laser therapy, each 15 minutes; and
- electrical stimulation (unattended) to one or more areas for indication(s) other than wound care.[11]

F.F. 1(a). On June 6, 2018, Reviewer conducted a telephone interview with Provider, during which Provider informed Reviewer that Claimant had been fully participating in daily activities. F.F. 1(f), R.R. at 69a. Provider explained to Reviewer that Claimant treated with him once per week, and that the treatments assisted Claimant in reducing dependence on pain medication and in maintaining his level of function. *Id.* Provider also stated that Claimant had been provided with at-home laser treatment. *Id.*

---

[10] Chiropractic modalities are physical agents applied to produce therapeutic changes to biologic tissues, and may include treatments such as ultrasound and spinal traction.

[11] Despite identifying "electrical stimulation (unattended) to one or more areas for indication(s) other than wound care" as a separate treatment, Reviewer only addressed electrical stimulation therapy as "physical medicine treatment to one area to include electrical stimulation (unattended)." *See* F.F. 1(a), (g)-(i). It appears that these two treatments are, in fact, the same. *See* UR Report at 7, R.R. at 16a (discussing the "physical medicine modality of treatment of electrical stimulation unattended for one or more areas for indications other than wound care").

On June 14, 2018,[12] Reviewer issued a UR Determination, accompanied by a UR Report,[13] concluding that the following treatments were reasonable and necessary between April 3, 2017[14] and April 9, 2018:

- chiropractic manipulative treatment, spinal, one to two regions;
- chiropractic manipulative therapy, spinal, one to two regions;
- massage to include effleurage, petrissage and tapotement;
- physical medicine treatment to one area to include electrical stimulation (unattended);
- therapeutic exercises to develop strength;
- vertebral axial decompression in the form of cervical fraction;
- application of modalities requiring provider assistance, one or more areas; and
- low-level laser therapy.

F.F. 1(g). In support of this determination, Reviewer explained that Provider's documentation indicated that Claimant could once again perform daily activities previously hindered by his injuries. F.F. 1(j). Reviewer further determined that the following treatments were reasonable and necessary at a frequency of one time per week beyond April 9, 2018:

- chiropractic manipulative treatment, spinal, one to two regions;

---

[12] The UR Determination was dated June 12, 2018, and was mailed to all parties and provided to the Bureau on June 14, 2018. *See* UR Determination at 1-2, R.R. at 8a-9a.

[13] Reviewer issued a UR Determination accompanied by a UR Report setting forth in detail the bases for his determination.

[14] Although Employer requested UR of all treatment provided to Claimant by Provider from April 3, 2017 onwards, Reviewer identified the first date of service under review as April 4, 2017, as based upon documentation provided. *See* UR Report at 3 & 9, R.R. at 12a & 18a.

- chiropractic manipulative therapy, extraspinal, one or more regions;

- massage to include effleurage, petrissage and tapotement; and

- vertebral axial decompression in the form of cervical fraction.

F.F. 1(h). Reviewer reasoned that these treatments were reasonable and necessary at a frequency of only once per week, because there were "numerous times" when a break in treatment lasting at least one week effected no change in Claimant's symptoms. F.F. 1(k). Reviewer deemed the following treatments neither reasonable nor necessary beyond April 9, 2018:

- physical medicine treatment to one area to include electrical stimulation unattended;

- therapeutic exercises to develop strength;

- application of modalities requiring provider assistance, one or more areas; and

- low-level laser therapy.

F.F. 1(i).[15] Reviewer explained that Provider's failure to address with specificity either the frequency or the goals of Claimant's treatment undermined ongoing use of in-office electrical stimulation, particularly when Claimant had transitioned to use of an at-home electrical stimulation unit. F.F. 1(l)(i). Reviewer further reasoned that Provider's documentation failed to include a time-limited, goal-oriented, function-based treatment plan, to identify any specific criteria or goals for the utilization of therapeutic exercises, or to establish clinical necessity for a supervised,

---

[15] Despite explaining why the above-identified treatments were unreasonable and unnecessary after April 9, *2018*, in an apparent typographical error, Reviewer subsequently noted in the summary following this explanation that these treatments were unreasonable and unnecessary beyond April 9, *2017*. *See* UR Report at 9, R.R. at 18a. The WCJ found that Reviewer determined these treatments were neither reasonable nor necessary after April 9, *2018*. *See* F.F. 1(l), R.R. at 70a.

in-office therapeutic program when transition to a home-based therapeutic program "should have been established quite some time ago." F.F. 1(l)(ii). Reviewer also noted that therapeutic exercise is not typically part of an ongoing regimen of chronic pain management or supportive care. *Id.* Moreover, Reviewer found that Provider's documentation failed to establish that continued use of low-level laser therapy would provide therapeutic benefit, noting that "[s]light breaks in care" did not alter Claimant's "clinical picture." F.F. 1(l)(iii).[16]

On June 22, 2018, Claimant petitioned for review of the UR Determination. WCJ's Decision, 9/4/19 at 3, R.R. at 68a. The WCJ held a hearing on March 6, 2019, in which Claimant and Employer participated.[17] *See* Transcript of Testimony (T.T.), 3/6/19 at 1-25, R.R. at 41a-65a. Claimant testified that he has treated with Provider two to three times per week since April of 2017. F.F. 3(b). Treatment included electrical stimulation, laser therapy, use of a machine that spreads his neck, and chiropractic manipulation. F.F. 3(a). Claimant sometimes received chiropractic treatment four times per week when his condition was "really bad," and he also treated more frequently with Provider when the weather was rainy and damp. *Id.*; F.F. 3(c). The chiropractic treatments were helpful, as they enabled

---

[16] Reviewer based his determination on various records submitted by Provider, including Provider's notes from Claimant's office visits; notes and reports from Claimant's visits with other doctors; copies of MRIs (magnetic resonance imaging) of the lumbar spine and cervical spine; results of EMG (electromyography) and NCV (nerve conduction velocity) tests. UR Report, 6/14/18 at 1-2, R.R. at 10a-11a.

As noted above, Reviewer did not review "therapeutic procedures, one or more areas, each 15 minutes." *See supra* note 9.

[17] "The [UR] report shall be part of the record before the [WCJ]." Section 306(f.1)(6)(iv) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6)(iv). "The [WCJ] shall consider the [UR] report as evidence but shall not be bound by the report." *Id.*; *see also* Section 127.556 of the Bureau's Regulations, 34 Pa. Code § 127.556.

8

Claimant "to move to get around." F.F. 3(a) (quoting T.T., 3/6/19 at 9-10, R.R. at 49a-50a). Claimant testified that when he missed a treatment because of vacation or some other reason, he experienced difficulty getting out of bed. *Id.* Claimant further asserted that without chiropractic treatment, there was "no way [he] would have been able to work." *Id.* (quoting T.T., 3/6/19 at 10, R.R. at 50a). As of the date of the hearing, Claimant had difficulty turning his head and was experiencing numbness and tingling down his left arm, loss of feeling in his left hand and sharp neck pain that interfered with his sleep. F.F. 3(b), R.R. at 71a. Claimant had neck surgery scheduled for March 28, 2019. *Id.* Claimant's understanding was that he would resume chiropractic treatment after a period of recuperation following the surgery. *Id.* Claimant still received electrical stimulation treatment from Provider even though he received a transcutaneous electrical nerve stimulation (TENS) unit[18] for home use in June 2018. F.F. 3(c), R.R. at 71a. Claimant also used a back brace at home. *Id.* Claimant did not have an infrared system for at-home treatments. *Id.* Claimant's chiropractic treatments with Provider provided pain relief lasting one to two days, though he needed to treat with Provider more often when the weather was rainy and damp. *Id.* Claimant suffered from neck and left-shoulder pain, generally experiencing the most pain in his neck. F.F. 3(c), R.R. at 71a. Claimant's last day of work was May 3, 2018, and Claimant's treatment plan had not changed since that time. F.F. 3(b). Claimant conceded that he spent his time at home watching television and did not engage in any physical activity. *Id.*

---

[18] A TENS unit uses electrical pulses or charges to confuse pain signals going to the brain, in order to provide pain relief and reduce muscle spasms. *See What Does a TENS Unit Do for Muscles? Find Out!*, BACKCORETHERAPY, available at https://backcoretherapy.com/what-does-a-tens-unit-do-for-muscles/#:~:text=A%20TENS%20unit%20may%20also%20help%20with%20muscle,reeducating%20muscles%2C%20in%20addition%20to%20combating%20muscle%20atrophy (last visited Dec. 1, 2021).

Claimant also submitted into evidence a report from Provider dated July 13, 2018. *See* T.T., 3/6/19 at 23, R.R. at 63a; Provider's Report at 1, R.R. at 38a. Provider indicated in the report that Claimant responded well to receiving treatments twice per week. Provider's Report at 3, R.R. at 40a. Provider opined that with corrective treatment and additional reinforcement of ergonomic and exercise recommendations, Claimant has progressed and can manage his chronic symptoms. *Id.* at 3, R.R. at 40a. Provider further opined that when regional exacerbations are permitted to progress without rehabilitative care, joint dysfunction, spasm, restriction and pain will usually occur. *Id.*

On September 4, 2019, the WCJ issued a decision denying Claimant's petition. WCJ Decision, 9/4/19 at 1 & 8, R.R. at 66a & 73a. The WCJ deemed Reviewer's opinions more credible and persuasive than Claimant's testimony and Provider's report with respect to the treatments deemed reasonable and necessary at a frequency of only once per week. F.F. 4, R.R. at 71a. The WCJ found that Reviewer's records documented numerous instances where Claimant went without treatment for at least one week yet experienced no change in his condition. F.F. 4(a), R.R. at 71a. The WCJ further found that Reviewer understood from his June 6, 2018 telephone conversation with Provider that Claimant treated with Provider once per week. *Id.* The WCJ also found that Provider discussed Claimant's treatment only in general terms, failing to specifically explain Claimant's need for chiropractic manipulation, massage and vertebral axial decompression at a frequency of more than once per week. F.F. 4(b), R.R. at 71a. The WCJ noted Claimant's testimony that chiropractic treatment enabled him to continue working, but pointed out Claimant's acknowledgement that he had the same complaints and remained under

10

the same treatment plan with Provider both before and after he stopped working in May of 2018. F.F. 3(c), R.R. at 71a.

The WCJ also deemed Reviewer's opinions more credible and persuasive than Claimant's testimony and Provider's report with respect to the treatments found unreasonable and unnecessary after April 9, 2018. F.F. 5, R.R. at 72a. The WCJ credited Reviewer's opinion that Provider failed to justify continued in-office electrical stimulation treatments when Claimant had an electrical stimulation unit for use at home. F.F. 5(a), R.R. at 72a. The WCJ further noted that Provider failed to identify either a treatment plan or specific goals or criteria for a continuing therapeutic exercise program. *Id.* Regarding low-level laser therapy, the WCJ found that Reviewer credibly explained that slight breaks in care did not result in a change in Claimant's clinical presentation and that Provider's records failed to explain how further treatment would produce therapeutic benefit. *Id.* Further, the WCJ noted that Provider discussed Claimant's treatment in general terms, did not provide specific references to exams or outcomes, and failed to explain why continued use of electrical stimulation, therapeutic exercise and low-level laser was warranted. F.F. 5(b), R.R. at 72a. The WCJ noted Claimant's acknowledgment that he has continued to receive electrical stimulation treatment at Provider's office even after receiving a TENS unit for home use. F.F. 5(c), R.R. at 72a. The WCJ deemed unpersuasive Claimant's testimony that Provider's treatment increased his mobility in light of Claimant's testimony regarding his limited daily activities. F.F. 5(c), R.R. at 72a.

Thus, the WCJ concluded that Employer met its burden of proving that Claimant's chiropractic manipulation, massage and vertebral axial decompression treatments with Provider were unreasonable and unnecessary at a frequency of more

than once per week after April 9, 2018, and that Claimant's electrical stimulation, therapeutic exercise and low-level laser therapy treatments with Provider were unreasonable and unnecessary after April 9, 2018. Conclusion of Law (C.L.) 3-4, R.R. at 72a. The WCJ, therefore, ordered that Employer was not responsible to pay for chiropractic manipulation,[19] massage or vertebral axial decompression provided to Claimant by Provider at a frequency of more than once per week after April 9, 2018, or for electrical stimulation, therapeutic exercises or low-level laser therapy provided to Claimant by Provider after April 9, 2018. *Id.* at 8, R.R. at 72a.

Provider thereafter appealed to the Board, asserting that the WCJ's findings were not supported by the record and were "insufficient" and "inconsistent," that the WCJ's decision was not well reasoned, that the WCJ "committed other errors of law" and that Reviewer impermissibly conducted retrospective review of treatment dating back to April 3, 2017, even though Employer failed to submit its UR request within 30 days of receipt of the bills corresponding to the treatment under review. Provider's Appeal, 9/19/19 at 1-4, R.R. at 74a-77a. Employer countered that Provider waived the issue of untimely retrospective review by failing to raise the question before the WCJ; regardless, there was no issue with regard to retrospective review as the UR request was filed on April 10, 2018, and Reviewer deemed all treatment from April 3, 2017 through April 9, 2018 reasonable and necessary. *See* Board Opinion, 8/20/20 at 2-3, R.R. at 98a-99a.

On August 20, 2020, the Board issued an opinion and order remanding the matter to the WCJ to correct the record by adding certain documents which were missing from the record certified on appeal, but which were submitted by Employer

_____

[19] The WCJ's reference to chiropractic manipulative treatment presumably included both "spinal one to two regions" and "extraspinal one or more regions." *See* UR Report at 8-9, R.R. at 17a-18a.

12

as Exhibits D-2 (UR Determination and Report) and D-3 (2018 WCJ Decision)[20] at the March 6, 2019 hearing. *Id.* at 3, R.R. at 88a. The Board also noted that it was unable to determine whether the issue of waiver was raised before the WCJ. *Id.* at 2, R.R. at 87a.

The WCJ held a hearing on September 9, 2020, at which the parties "confirmed that Exhibits D-2 and D-3 had been submitted into evidence consistent with the Board's instructions." WCJ Decision, 9/16/20 at 3, F.F. 2, R.R. at 92a. The WCJ subsequently closed the record and returned the matter to the Board. *Id.* at 4, R.R. at 93a.

By opinion and order dated December 23, 2020, the Board affirmed the WCJ's denial of Provider's challenge to the UR Determination. Board Opinion, 12/23/20 at 1, R.R. at 97a. The Board again stated that it was unable to determine whether the issue of waiver was raised before the WCJ. *Id.* at 3, R.R. at 99a. Nevertheless, the Board noted that even where retrospective UR is untimely requested, prospective UR is appropriate. *Id.* (citing *Jackson v. Workers' Comp. Appeal Bd. (Boeing)*, 825 A.2d 766, 773 (Pa. Cmwlth. 2003)). Further, the Board determined that any retrospective UR conducted in the present matter was harmless, as Reviewer found all prior treatments reasonable and necessary and only deemed certain treatments unreasonable and unnecessary on a prospective basis. *Id.* Moreover, the Board disagreed with Provider's assertion that the WCJ mischaracterized Claimant's testimony, ignored uncontradicted testimony and failed to set forth adequate reasons for the rejection of Claimant's testimony, explaining as follows:

---

[20] By decision dated September 5, 2018, the WCJ adopted parties' Stipulation and granted the reinstatement petition, further specifying that its decision and order would have no effect on Claimant's June 22, 2018 petition for review of the UR Determination. *See* WCJ's Decision, 9/5/18 at 3-4, R.R. at 23a-24a.

13

The WCJ found [Reviewer's] opinions more credible and persuasive than Claimant's testimony and Provider's report. He observed that [Reviewer] explained that Provider's records show numerous breaks in treatment of at least one week resulting in no change in Claimant's symptoms, and that [Reviewer] understood Provider was treating Claimant once per week. The WCJ found that Provider did not specifically explain why Claimant need[ed] treatment more than once a week and Claimant agreed that his treatment was the same before and after he stopped working in May 2018.

Regarding the treatment found unreasonable and unnecessary after April 9, 2018, the WCJ again found [Reviewer's] opinions credible. He found that Provider did not make specific references to outcome in his records to explain why continued use of the treatment was warranted, and that Claimant agreed he was receiving the same electrical stimulation at the office after receiving a TENS unit for home use. The WCJ did not accept Claimant's testimony to increased mobility, considering Claimant's testimony as to his daily activities.

*Id.* at 7-8, R.R. at 103a-04a. Further, the Board determined that while Provider's explanation regarding the increase in Claimant's treatment to several times per week following Reviewer's telephone conversation with Provider was reasonable, "the WCJ did not reject Claimant's testimony and Provider's report solely on that basis." *Id.* at 8, R.R. at 104a.[21] Moreover, the Board noted that credibility determinations

---

[21] We note that the record does not support Provider's assertion on appeal to the Board that the frequency of Claimant's treatments increased following Provider's telephone conversation with Reviewer. The WCJ found that Reviewer "had the understanding" that Provider treated Claimant once per week, while also noting Claimant's testimony that he has treated with Provider two to three times per week since April of 2017. F.F. 3(b), 4(a); *see also* T.T., 3/6/19 at 9-11, R.R. at 50a-51a. Further, the dates of service under review listed in the UR Report indicate that Claimant treated with Provider more than once per week prior to Employer's April 10, 2018 UR

14

are reserved for the WCJ. *Id.* (citing *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995)). Provider thereafter petitioned this Court for review.

## II. Issues on Appeal

Before this Court,[22] Provider argues that Board erred in affirming the WCJ's denial of his challenge to the UR Determination, as the WCJ failed to address the threshold issue of whether Employer timely requested retrospective UR. *See* Provider's Br. at 9-10. Provider asserts that remand is appropriate here because the WCJ failed to render any findings regarding the question of timeliness, as was necessary for a proper application of the law. *Id.* at 9-10. Provider also contends that the WCJ rendered "inconsistent" factual findings regarding Claimant's testimony and Provider's report that lacked evidentiary support. *Id.* at 10. Provider asserts that the WCJ erred in finding Claimant's testimony "inconsistent inasmuch as [he] advised [Reviewer] that the treatment was weekly and [Claimant

---

request. *See* UR Report at 9, R.R. at 18a (listing 66 dates of service under review between April 4, 2017 and April 9, 2018, several of which plainly indicate that Claimant treated with Provider two to three times per week). Moreover, Provider stated in his July 13, 2018 report that Claimant "responded well to the current treatment schedule at two times weekly." Provider's Report at 3, R.R. at 40a.

[22] This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Russell v. Workmen's Comp. Appeal Bd. (Volkswagen of Am.)*, 550 A.2d 1364 (Pa. Cmwlth. 1988). On appeal, the prevailing party is entitled to the benefit of the most favorable inferences to be drawn from the evidence. *Fulton v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 707 A.2d 579, 582 (Pa. Cmwlth. 1998). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses; rather, the Board or reviewing court must simply determine whether, upon consideration of the evidence as a whole, the findings of fact have the requisite measure of support in the record. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992).

subsequently] testified that the treatment was 2 to 3 times per week." *Id.* at 10 (citing F.F. 2; T.T., 3/6/19 at 10-11, R.R. at 50a-51a). Provider maintains that "[i]n actuality, at the time [] Provider spoke to [] [R]eviewer on June 6[,] 2018, the treatment was once per week, and when [Claimant] testified nine months later on March 6, 2019, he testified that treatment at that time was 2 to 3 times per week[.]" *Id.* at 10 (citing T.T., 3/6/19 at 10-11, R.R. at 50a-51a).

Provider also asserts that the WCJ erred in determining that his Report failed to explain the rationale for Claimant's treatment, when the report in fact "stated exactly why he was prescribing the treatments[.]" *Id.* at 10-11. Further, Provider maintains that the WCJ erred in discrediting Claimant's testimony that Provider's treatments increased his mobility, as the WCJ "failed to explain away [Claimant's] testimony that [Provider's] treatments allowed him to at least move to get around." *Id.* at 11. Provider also contends that the WCJ "failed to even mention" Claimant's testimony that "[i]f [he] [were] to miss a day or a week, [he was] so bad [he] could barely get out of bed[.]" *Id.* at 11 (quoting T.T., 3/6/19 at 9-10, R.R. at 49a-50a). Provider maintains that the WCJ "ignore[d] this uncontradicted testimony," which "is a fatal error of law, especially when the [WCJ] does not set forth adequate reasons for the rejection of [] Claimant's testimony." *Id.* at 11-12. Provider asserts that where uncontradicted evidence is rejected, the reasons for the rejection must be included in the decision. *Id.* at 12 (citing *Cmwlth. of PA/DPW-Loysville Youth Ctr. v. Workers' Comp. Appeal Bd. (Stesser)*, 103 A.3d 397 (Pa. Cmwlth. 2014); *Serrano v. Workers' Comp. Appeal Bd. (Chain Bike Corp.)*, 718 A.2d 885 (Pa. Cmwlth. 1998); *Acme Mkts, Inc. v. Workmen's Comp. Appeal Bd. (Pilvalis)*, 597 A.2d 294 (Pa. Cmwlth. 1991); *Farquhar v. Workmen's Comp. Appeal Bd. (Corning Glass Works)*, 528 A.2d 580 (Pa. 1987); *Lowry v. Pittsburgh Coal Co.*,

235 A.2d 805 (Pa. 1967)). Thus, Provider requests that this Court either reverse the Board's December 23, 2020 decision and "or vacate and remand for a reasoned decision in accordance with the evidence." Provider's Br. at 13.[23]

Employer counters that Provider waived any question of the timeliness of Employer's request for retrospective UR for failure to raise the issue before the WCJ.[24] Employer's Br. at 16 (citing *Brown v. Workers' Comp. Appeal Bd. (Knight-Ridder, Inc./Phila. Newspapers, Inc.)*, 856 A.2d 302, 308 (Pa. Cmwlth. 2004)). Regardless, Employer contends that the timeliness of its request for retrospective UR is "irrelevant," as certain treatment was deemed unreasonable and unnecessary on a prospective basis only (*i.e.*, from April 10, 2018 onwards). *Id.* at 16. Employer maintains it is well settled that where a UR request seeks both retrospective and prospective UR, prospective UR may be conducted irrespective of the timeliness of the request for retrospective UR. *Id.* at 16-17 (citing *Jackson*, 825 A.2d at 772-73).

Further, Employer asserts that the WCJ's findings are supported by substantial competent evidence. Employer's Br. at 16. Employer contends that even if the frequency of Claimant's treatments increased by the time he testified in March 2019, the WCJ correctly credited Reviewer's opinions on the basis that Provider's records demonstrated that Claimant's failure to receive treatment for up to a week

---

[23] In its summary of the argument, Provider asserts that the Board "erred in affirming the [WCJ's] decision denying payment for retroactive treatment done over a year prior to the [UR] being filed by [] Employer." Provider's Br. at 7. Provider fails, however, to specify which prior treatment is at issue. Further, Provider fails to explain how the WCJ denied payment for any treatment preceding the date of Employer's April 10, 2018 UR request, when Reviewer deemed reasonable and necessary all treatment provided from April 3, 2017 to April 9, 2018. *See* UR Report at 8-9, R.R. at 17a-18a; *see also* Board Opinion, 8/20/20 at 2-3, R.R. at 98a-99a.

[24] As noted above, Claimant appealed the UR Determination to the WCJ. *See* WCJ's Decision, 9/4/19 at 3, R.R. at 68a. Provider filed the instant appeal.

did not affect his condition. *Id.* at 18. Moreover, Employer maintains that credibility determinations are the province of the WCJ. *Id.* at 19-20.

### III. Discussion

"[T]he employer has the burden throughout the UR process of proving that the challenged medical treatment is unreasonable or unnecessary." *Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1261 (Pa. Cmwlth. 1998). "[T]reatment may be reasonable and necessary even if it is designed to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition." *Cruz v. Workers' Comp. Appeal Bd. (Phila. Club)*, 728 A.2d 413, 417 (Pa. Cmwlth. 1999).

We first address Provider's contention that the WCJ erred in failing to decide the "threshold" question of whether Employer timely requested retrospective UR. The Board concluded that the WCJ was authorized to conduct prospective UR of treatment without regard to the retrospective portion of Employer's UR request. *See* Board Opinion,12/23/20 at 3, R.R. at 99a. We agree.

In *Jackson*, we held that even where "the 30[-]day period renders the retrospective review portion of [a] petition [for UR] untimely, the prospective review portion of the petition [is] appropriately before the WCJ." *Jackson*, 825 A.2d at 773. Here, Employer submitted its UR request on April 10, 2018. The WCJ considered the UR Determination and Report and concluded that Employer satisfied its burden of proving that chiropractic manipulation, massage and vertebral axial decompression treatments provided to Claimant by Provider after April 9, 2018 were reasonable and necessary only at a frequency of once per week, and that electrical stimulation, therapeutic exercises, application of modalities and low-level laser

18

therapy treatments provided to Claimant by Provider after April 9, 2018 were neither reasonable nor necessary. C.L. 3-4. While Reviewer did conduct retrospective UR, the WCJ addressed the challenged treatments only on a prospective basis.[25] *See* Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv) ("The [WCJ] shall consider the [UR] report as evidence but shall not be bound by the report."). Because "the WCJ's conclusion that further chiropractic treatment was unnecessary had prospective application, and as the conclusion was supported in the record, the WCJ's decision was appropriate." *Jackson*, 825 A.2d at 773.[26] Thus, we agree with

---

[25] Although the UR Report lists the dates of service under review, it does not indicate when Employer received the bills corresponding to the treatment under review. The earliest date of service, April 4, 2017, predates Employer's April 10, 2018 UR request by roughly one year. Thus, barring any delay by Provider in sending bills to Employer, Employer's request for retrospective review of certain prior treatments may have been untimely. *See* Section 127.404(b) of the Bureau's Regulations, 34 Pa. Code § 127.404(b).

[26] Reviewer determined in the UR Report that chiropractic manipulative treatment (spinal and extraspinal), massage and vertebral axial decompression, application of modalities and low-level laser therapy treatments were reasonable and necessary between April 3, 2017 and April 9, 2018. *See* UR Report at 6, R.R. at 15a. Reviewer further concluded that these same treatments were only reasonable and necessary at a frequency of once per week beyond April 9, 2018. *See id.* However, we note that the summary following Reviewer's determination in the UR Report indicates that Reviewer deemed these treatments reasonable and necessary only at a frequency of once per week between April 3, 2017 and April 9, 2018 (with the remaining treatments deemed reasonable and necessary "as provided" during the same time period), even though the accompanying list of the dates of service under review indicates that treatments were provided more than once per week on numerous occasions, thus indicating that Reviewer may have retrospectively deemed certain treatments unreasonable and unnecessary. *See id.* at 8-9, R.R. at 17a-18a. However, the WCJ found that Reviewer only deemed certain treatments unreasonable and unnecessary prospectively beyond April 9, 2018, and the Board affirmed. *See* F.F. 1(g)-(i); Board Opinion, 12/23/20 at 3, R.R. at 99a. In the absence of any challenge thereto, the parties are, therefore, bound by the WCJ's finding that all treatments reviewed retrospectively were deemed reasonable and necessary by Reviewer. *See Munski v. Unemployment Comp. Bd. of Rev.*, 29 A.3d 133, 137 (Pa. Cmwlth. 2011) ("Unchallenged findings are conclusive on appeal[.]").

the Board that the prospective portion of Employer's UR request was appropriately before the WCJ.[27]

Provider next asserts that the WCJ erred in deeming Claimant's testimony that he treated with Provider two to three times per week "inconsistent" with Provider's statement in his July 13, 2018 report that Claimant treated with him once per week. Provider attempts to resolve the purported inconsistency between Claimant's testimony and his report by explaining that Claimant received treatments once per week as of the date of the July 13, 2018 report and that the frequency of these treatments increased to several times per week by the time Claimant testified on March 6, 2019. In actuality, the WCJ noted Claimant's testimony that he had been treating with Provider two to three times per week *since 2017*, *see* F.F. 3(b), while also finding that Reviewer "*had the understanding*" from the June 6, 2018 telephone conversation "that [Provider] was treating Claimant once per week," *see* F.F. 4(a) (emphasis added). Further, the WCJ found that "[Provider] wrote [in his Report] that Claimant responded well to the treatment plan at two times weekly." F.F. 2(c). Although the WCJ deemed Reviewer's opinions more credible and persuasive than Claimant's testimony and Provider's report, the WCJ did not specifically fault Claimant's testimony as "inconsistent" with Provider's report. *See* F.F. 5. Rather, the WCJ cited Claimant's acknowledgment that his current daily activities remain limited and that his complaints remained unchanged after he stopped working in May of 2018 as undermining the credibility and persuasiveness

---

[27] In *Jackson*, we noted that "because [the c]laimant ha[d] received full compensation for all chiropractic treatment rendered up to the time the UR petition was filed, the WCJ's evaluation of retrospective benefits was harmless." *Jackson*, 825 A.2d at 773 n.9. Here, despite finding that Reviewer deemed reasonable and necessary all treatments under retrospective review, the WCJ did not render any conclusions of law concerning these treatments, instead addressing treatments only on a prospective basis. *See* F.F. 1(g); C.L. 3-4.

20

of Claimant's testimony and Provider's report. *See* F.F. 4(c), 5(c). Thus, Provider's assertion lacks merit.

Provider's remaining arguments challenge the WCJ's credibility determination. It is well settled that "the WCJ in a [w]orkers' [c]ompensation proceeding is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997); *see also Sherrod*, 666 A.2d at 385 ("The authority of the Judge over questions of credibility, conflicting medical evidence, and evidentiary weight is unquestioned."). As our Supreme Court has explained:

> The appellate role in [a workers'] compensation case is not to reweigh evidence or review credibility of witnesses; rather, the . . . Board or the reviewing court must simply determine whether, upon consideration of the evidence as a whole, [findings of fact] have the requisite measure of support in the record. Credibility determinations are within the exclusive province of the referee and findings of fact can be overturned only if they are arbitrary and capricious.

*Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995) (citations omitted). Here, Provider supports his assertion that the challenged treatments are reasonable and necessary by citing Claimant's testimony that the treatments enabled him to maintain basic mobility. The WCJ deemed this testimony less credible and persuasive than Reviewer's opinions. "Since the WCJ's finding that the chiropractic treatment was unreasonable and unnecessary was based on credibility determinations, that finding is conclusive and may not be disturbed on appeal, unless it is arbitrary and capricious." *Jackson*, 825 A.2d at 772 (citing

21

*Lehigh Cnty.*, 652 A.2d 797) (affirming Board's affirmance of a WCJ's denial of a chiropractor's (provider) petition to review UR determination, where the WCJ accepted reviewer's UR report as more credible than provider's report). Provider further asserts that the WCJ failed to provide adequate reasons for the rejection of Claimant's testimony. We note, however, that the WCJ reasoned that Claimant's testimony that Provider's treatment increased his mobility was not persuasive in light of his testimony regarding his limited daily activities. *See* F.F. 5(c). The WCJ also cited Reviewer's explanation that slight breaks in care did not affect Claimant's clinical presentation. *See* F.F. 5(a).

For the foregoing reasons, we agree with the Board that the WCJ did not err in affirming the UR Determination with respect to the challenged prospective treatment.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Maher, DC,             :
         Petitioner       :
                           :
          v.             :
                           :
City of Philadelphia (Workers'    :
Compensation Appeal Board),    :   No. 34 C.D. 2021
         Respondent   :

# O R D E R

AND NOW, this 2nd day of December, 2021, the December 23, 2020 decision of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge